1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL STANLEY,

11             Plaintiff,                   No. CIV S-10-0563 EFB

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
               Defendant.              ORDER
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

18   XVI of the Social Security Act.  For the reasons discussed below, the court grants plaintiff's

19   motion for summary judgment, denies the Commissioner's cross-motion for summary judgment,

20   and remands the case for further proceedings.

21   I.     Factual and Procedural Background

22        Plaintiff, Michael Stanley, filed an application for supplemental security income on May

23   11, 2007, alleging that he had been disabled since November 1, 2006.  Administrative Record

24   ("AR") 50, 83, 100.  Plaintiff's application was initially denied on September 10, 2007, and upon

25   reconsideration on November 29, 2007.  *Id.* at 53, 60.  On November 4, 2008, a hearing was held

26   before administrative law judge ("ALJ") Mark C. Ramsey.  *Id.* at 11.  Plaintiff, who was

1

represented by attorney Peter Brixie, testified at the hearing. *Id.* at 20-49.

On March 6, 2009, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1]  *Id.* at 13, 19.  The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since May 11, 2007, the application date (20 CFR 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments: gout, hypertension, left eye blindness, obesity, antisocial personality disorder, and schizophrenia (20 CFR 416.921 et seq).
>
> ...
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    ...

2    4.  After careful consideration of the entire record, the undersigned finds that the
     claimant has the residual functional capacity to perform medium work as defined
3    in 20 CFR 416.967(c).  He is unable to perform jobs that require vision in two
     eyes.  He is limited to simple unskilled work that does not involve frequent public
4    or fellow employee contact.

5    ...

6    5.  The claimant is capable of performing past relevant work as a kitchen helper
     and dishwasher. This work does not require the performance of work related
7    activities precluded by the claimant's residual functional capacity (20 CFR
     416.965).

8    ...

9
     6.  The claimant has not been under disability, as defined in the Social Security
10   Act, since May 11, 2007, the date the application was filed (20 CFR 416.920(f)).

11   *Id.* at 13-18.

12        Plaintiff requested that the Appeals Council review the ALJ's decision.  *Id.* at 5-7.

13   However, on February 5, 2010, the Appeals Council denied review, leaving the ALJ's decision

14   as the "final decision of the Commissioner of Social Security."  *Id.* at 2.

15   II.    Standard of Review

16        The Commissioner's decision that a claimant is not disabled will be upheld if the findings

17   of fact are supported by substantial evidence in the record and the proper legal standards were

18   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

19   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

20   180 F.3d 1094, 1097 (9th Cir. 1999).

21        The findings of the Commissioner as to any fact, if supported by substantial evidence,

22   are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

23   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

24   (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

25   support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

26   *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

                                            3

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

3    2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

4    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5    *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

6    III.    Analysis

7         Plaintiff contends that the ALJ erred in improperly relying on an opinion of a doctor,

8    Satish Sharma, M.D., which does not appear in the record, and by failing to give proper weight

9    to the opinions of his treating physicians, while improperly relying upon an examining

10   physician's opinion.  Pl.'s Mot. for Summ. J., Dckt. No. 18, at 8.

11        A.   The ALJ's Reference to Satish Sharma Was an Inadvertent Mistake.

12        Plaintiff contends that the ALJ improperly relied on an evaluation completed by Satish

13   Sharma, M.D., who does not appear in the record.  Dckt. No. 18 at 8.  The ALJ's decision states,

14   "Satish Sharma, M.D. conducted an internal medicine evaluation in August 2007," and repeats

15   the name "Sharma" in discussing the evaluation.  AR 17.  The ALJ also writes about Sharma in

16   discussing a mental health assessment completed by Timothy Canty, M.D.  *Id.*  As plaintiff

17   points out, there is no opinion, statement testimony or report by Dr. Sharma appearing anywhere

18   in the Administrative Record.  Indeed, no one named Sharma ever treated or examined plaintiff.

19        However, a review of the administrative record shows that the ALJ merely used the

20   wrong name in his opinion.  Though the ALJ uses the name "Sharma," it is apparent that he is

21   referring to August 2007 evaluations completed by Sanford Selcon, M.D. and a mental health

22   assessment completed by Dr. Canty.  *See* AR 17, 167-171, 177.  The ALJ also cites to "Ex. 3F,"

23   which is Dr. Selcon's report.  The ALJ's references to "Satish Sharma, M.D." and "Dr. Sharma"

24   are unfortunate but inadvertent typographical mistakes and are inconsequential to the final

25   ////

26   ////

1    decision.[2]  Because the ALJ's reference to Dr. Sharma has no discernable impact on the

2    disability determination in this case, the mistake was harmless.

3          B.  The ALJ Erred in Weighing Plaintiff's Treating and Examining Physicians' Opinions.

4          The ALJ erred in rejecting plaintiff's treating physicians' opinions in favor of an

5    examining physician's opinion who did not review plaintiff's medical records.  The weight given

6    to medical opinions depends in part on whether they are proffered by treating, examining, or

7    non-examining professionals.  *Lester*, 81 F.3d at 830 (9th Cir. 1996).  Ordinarily, more weight is

8    given to the opinion of a treating professional, who has a greater opportunity to know and

9    observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d at 1273, 1285 (9th Cir.

10   1996).

11         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

12   considering its source, the court considers whether (1) contradictory opinions are in the record;

13   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

14   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

15   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

16   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.* at

17   830.  While a treating professional's opinion generally is accorded superior weight, if it is

18   contradicted by a supported examining professional's opinion (e.g., supported by different

19   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

20   1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

21

22         [2] The Eastern District of California has classified similar mistakes and improper
     designations as "inadvertent typographical errors."  In *German v. Commissioner of Social
23   Security*, the ALJ's reference to state agency psychologist "Dr. Dalton" as "Dr. Daigle" and
     examining psychologist "Dr. Wilkenfield" as "Dr. Wilkinson" were considered typographical
24   errors.  2011 WL 924737, *3 n.3, 4, (E.D. Cal. Mar. 4, 2011).  *See also Dean v. Astrue*, 2011
     WL 2553244, *12 (E.D. Cal. Jun. 24, 2011) (misdesignation of an examining physician as a
25   "non-examining" physician a typographical error or transcription); *see also Frizzell v. Astrue*,
     2011 WL 476433, *10 n.6 (E.D. Cal. Feb. 4, 2011) (court found ALJ's reference to "medium
26   work" was an inadvertent typographical error).

However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff's treating physicians include Arthur Giese, Raheel Khan, and Michael Zoglio, who all work at Human Resource Consultants ("HRC"), which is also referred to in the record as "Sacramento Mental Health." Dr. Giese treated plaintiff most frequently.

Plaintiff had his first appointment with Dr. Giese on September 4, 2007; the appointment lasted 65 minutes. AR 216. Dr. Giese completed an "Initial Psychiatric Evaluation," which reported that plaintiff "apparently" had a long history of episodic psychiatric contacts, attempted suicide in the 1980s, received treatment in Nevada in recent years because of "quick anger," had paranoid ideas about other people, and had command hallucinations of a homicidal nature. *Id.* Plaintiff told Dr. Giese that his psychotic symptoms were relieved by medication, including Celexa and Trazodone, but his "generic 'be-cool' pills" were not working as well as before. *Id.* Plaintiff also complained of auditory hallucinations, severe insomnia, irritability, depression, feelings of hopelessness, and suspiciousness and distrust of others. *Id.* Dr. Giese reported plaintiff was overweight and suffered from gout, a back injury, hypertension, high cholesterol, asthma, and left-eye blindness. Dr. Giese noted plaintiff conversed relevantly and coherently, and was polite, affable, oriented, and was in good general contact with reality. *Id.* Dr. Giese noted, "There is some depression of mood and he allows that he still hears 'that little man in the back of [his] head.'" *Id.* Dr. Giese concluded his one page report with the following DSM-IV diagnosis:

> Axis I: Schizoaffective disorder, depressed type 297.50
>        PSD 304.80
>        PTSD 309.81
> Axis II: No diagnosis v71.09
> Axis III: HTN, gout, asthma, exogenous obesity, back injury
> Axis IV: See AMSP
> Axis V: GAF 48.

*Id.*

On the same date, Dr. Giese completed a "Verification of Physical/Mental Incapacity" for plaintiff's application for general assistance. *Id.* at 219-20. Dr. Giese checked a box indicating that Plaintiff could perform "no work" and that his disability was "permanent." *Id.* Dr. Giese noted that Plaintiff had schizoaffective disorder, a permanent mental incapacity that prevents or substantially reduces his ability to engage in work and training. *Id.* at 220. Dr. Giese wrote that Plaintiff's schizophrenia impaired his "performance, persistence, and pace." *Id.*

On October 9, 2007, Plaintiff had his second appointment with Dr. Giese, which lasted 15 minutes. *Id.* at 258. Dr. Giese restated his earlier diagnosis that Plaintiff suffered from "schizophrenic affective disorder 295.70, PTSD 309.81, [and] PSD 304.80."[3] Plaintiff reported hallucinations to Dr. Giese, but did not report any delusions, depression, suicidal ideations, hypomania, or confusion. *Id.* Dr. Giese noted Plaintiff's current dosage of medications, including Risperdal, Celexa, Restoril, and Vicodin, and wrote:

> Michael has been maintaining fairly well on his present treatment. Risperdal was helpful in reducing hallucinations. He still tends to avoid groups of other people where he feels they are making uncomplimentary remarks about him. Trazodone has not been helping with sleep.

*Id.*

On December 17, 2007, Plaintiff had his third appointment with Dr. Giese, which lasted 15 minutes. *Id.* at 257. Dr. Giese restated his September 4, 2007 DSM-IV diagnosis, noted plaintiff's current dosage of medications and reported that Plaintiff was having a lot of back pain. *Id.* Dr. Giese also noted that Plaintiff was "feeling annoyed" with his family because they were moving back into the Sacramento area. *Id.* Dr. Giese noted that plaintiff always takes his medications and Plaintiff did not report any delusions, hallucinations, suicidal ideations, confusion, hypomania, or depression. *Id.* Dr. Giese refilled plaintiff's prescriptions, continued

---

[3] Dr. Giese's diagnosis appears on every report produced documenting plaintiff's visits to HRC with Dr. Giese, including October 17, 2007, December 17, 2007, and April 8, 2008, as well as the records documenting Plaintiff's visit with Dr. Zoglio, on October 16, 2008 and Dr. Khan on February 21, 2009. AR 257, 258, 262-63.

1  plaintiff on Vicodin for back pain, and recommended a follow up appointment in three months.

2  *Id.*

3        On April 8, 2008, Dr. Giese saw plaintiff and completed a "Medical Source Statement-

4  Mental"[4] for the purpose of "determining the individual's ability to do work related activities on

5  a day to day basis in a regular 40 hour a week setting." *Id.* at 262.  Dr. Giese reported that

6  plaintiff was "fair" at understanding and remembering detailed or complex instructions and very

7  short and simple instructions.  *Id.*  Under the category "Sustained Concentration and Task

8  Persistence," Dr. Giese indicated plaintiff's ability to carry out instructions was "fair," but his

9  ability to attend and concentrate and work without supervision was "poor." *Id.*  Under the

10  category "Social Interactions," Dr. Giese rated plaintiff's ability to interact with the public,

11  coworkers, and supervisors as "fair." *Id.* at 263.  Under the category "Adaptation," Dr. Giese

12  rated plaintiff's ability to adapt to changes in the workplace as "poor" and ability to be aware of

13  normal hazards in the work place and to use public transportation to travel to unfamiliar places

14  as "fair." *Id.*  Under the heading "What medical findings support your assessment?" Dr. Giese

15  wrote "schizophrenic illness." *Id.*  Dr. Giese opined that plaintiff's prognosis was "Guarded."

16  *Id.*

17        On October 16, 2008, plaintiff had a walk-in appointment with Dr. Zoglio, another

18  physician at HRC, which lasted 30 minutes.  *Id.* at 283-284.  Dr. Zoglio diagnosed plaintiff with

19  schizoaffective disorder by history, polysubstance dependence by history, and PTSD by history.

20  *Id.*  Dr. Zoglio wrote that plaintiff reported increased hallucinations, but he "appears to be coping

21  okay" and "they don't seem to significantly affect him at this time."  *Id.* at 284.  Per plaintiff's

22  request, Dr. Zoglio prescribed a higher Risperdal dosage to deal with the increased

23  hallucinations.  *Id.*  Dr. Zoglio noted plaintiff appeared to be clean and sober, alert, cooperative,

---

25      [4] In this report, Dr. Giese also indicated he last saw Plaintiff on March 17, 2008.  AR
26  262.  The record does not contain medical records documenting a March 17, 2008 treatment
    date.

with clear speech, stable mood, and no evidence of mania or depression. *Id.*

Plaintiff submitted additional medical records in support of his appeal to the Appeals Council. *Id.* at 285. These records show that on February 21, 2009, plaintiff had an appointment with Dr. Khan at HRC which lasted 20 minutes. *Id.* at 286. Dr. Khan wrote that plaintiff had a history of schizoaffective disorder, polysubstance disorder and PTSD. *Id.* Dr. Khan noted that plaintiff had been receiving treatment from HRC since October but that Dr. Khan had never treated Plaintiff before. *Id.* Dr. Khan noted that plaintiff reported that "things had been more difficult for him lately" and that he stopped taking his Risperdal since his last visit due to over-sedation and nocturnal incontinence. *Id.* Plaintiff reported increased auditory hallucinations to Dr. Khan. *Id.* Dr. Khan noted that plaintiff was alert, cooperative, with clear speech, stable mood, no evidence of mania or depression, and that despite plaintiff's claim of increased auditory hallucinations, plaintiff did not seem significantly affected at this time. *Id.*

In addition to the above assessments by plaintiff's treating physicians, the record also contains opinions by Dr. Canty, an examining physician. Dr. Canty, who examined plaintiff one time on August 10, 2007, diagnosed plaintiff with polysubstance abuse in remission and antisocial personality disorder, and noted that he "didn't have any significant emotional complaints today." AR at 174, 176-77. He opined that plaintiff had a GAF score of 65 and concluded that "from a purely psychiatric standpoint," plaintiff could do "simple to moderately complex nonpublic jobs" as he would be able to "get along with a few coworkers and supervisors." *Id.* Canty wrote "I don't think he would tolerate the public at this point," but opined that plaintiff "does not have psychiatric symptoms that would prevent him from attending appropriate work." *Id.* at 177. Dr. Canty noted that when plaintiff was asked about his general mood and emotional state, plaintiff responded, "I'm OK as long as I'm not around a huge bunch of people." *Id.* at 174. Dr. Canty noted plaintiff's current psychiatric medications, Celexa and Trazadone, and that plaintiff had undergone unspecified psychiatric care in Reno six months before. *Id.* Dr. Canty wrote that "no psychiatric medical records" were available for review and

that plaintiff had never been psychiatrically hospitalized. *Id.* Canty's report does not mention

that plaintiff has had auditory hallucinations.

The ALJ assigned minimal weight to Dr. Giese's, Dr. Khan's, and Dr. Zoglio's opinions,

while assigning significant weight to Dr. Canty's opinion. The ALJ wrote:

> At issue are extremely dire assessments of the claimant's mental state put forth by
> Arthur Giese M.D. and other practitioners at Sacramento County Mental Health.
> In July and September 2007, Dr. Giese reported that the claimant was
> permanently unable to do any work (Ex.10F). In August 2007, practitioners noted
> serious symptoms of psychosis and established a GAF score of 50 due to
> depression, poor concentration, isolating behavior, irritability, disorganized
> thoughts, increasing agitation, auditory hallucinations, mood swings, manic
> behavior, anxiety and feelings of worthlessness (Ex. 16F & 17F). The
> undersigned assigns minimal weight to the opinions of Dr. Giese and others at
> Sacramento Mental Health as they draw inferences from the claimant's history
> and subjective remarks rather from a long pattern of observed behavior and these
> opinions of such significant limitations are not supported by objective findings
> and are not consistent with the record in its totality.

*Id.* at 18. Regarding Canty's opinion, the ALJ wrote:

> The claimant's mental health was assessed by Timothy Canty, M.D., psychiatrist,
> in August 2007. Dr. Canty noted the claimant's long history of incarceration,
> drug abuse, and criminality which the claimant is trying to put behind him. Dr.
> Canty noted no significant emotional complaints upon examination and no current
> treatment or monitoring for such. He reported that the claimant does not like
> crowds as they are reminiscent of his incarceration. Dr. Canty noted that the
> claimant has intermittently worked and should have a good prognosis if he can
> remain clean and sober. He did not establish a specific Axis I psychiatric
> diagnosis while diagnosing antisocial personality disorder as an Axis II diagnosis.
> He established a Global Assessment of Functioning (GAF) of 65. Such a score is
> indicative of an individual who has mild difficulties in social and occupational
> functioning, but who generally functions pretty well and has some meaningful
> interpersonal relationships. Dr. Sharma [sic] opined that from a purely
> psychiatric standpoint, the claimant could do simple to moderately complex
> non-public jobs as he would be able to get along with a few co-workers and
> supervisors, but could not tolerate the public at this point. He noted that the
> claimant did not have any psychiatric symptoms that would prevent him from
> attending appropriate work. As Dr. Sharma's [sic] opinion is supported by
> extensive objective findings and is consistent with the body of evidence, the
> undersigned assigns it significant weight during deliberation.

*Id.* at 17.

The ALJ erred in assigning significant weight to Canty's opinion because Canty did not

review plaintiff's medical records. Canty should have been provided with plaintiff's medical

1   records.  *See* 20 C.F.R. §§ 404.1517, 416.917 ("If we arrange for [a consultative] examination or

2   test . . . [w]e will also give the examiner any necessary background information about your

3   condition.").  Because Canty did not review plaintiff's records, his opinion does constitute

4   substantial evidence that could justify rejecting the opinions of plaintiff's treating physicians.

5   *See Ladue v. Chater*, 1996 WL 83880, at *5 (N.D. Cal. 1996) (requiring remand where "[t]he

6   ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be

7   provided with necessary background information regarding the claimant's condition [and] it

8   appears from the record that the ALJ gave [the consultative examiner's] consultative report

9   considerable weight, even though [the consultative examiner] was lacking important background

10  information regarding plaintiff"); *Pruitt v. Astrue*, 2010 WL 1330164, at *4 (C.D. Cal., Mar. 31,

11  2010) (requiring remand where the ALJ relied on consultative psychologist's opinion who did

12  not completely review plaintiff's medical records); *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir.

13  2001) (holding that the reports of doctors who have examined a claimant once are not substantial

14  evidence upon which to base a denial of disability, especially when contradicted by other

15  medical evidence in the record).

16       Accordingly, Canty's opinion cannot be the basis for rejecting the opinions of treating

17  physicians Drs. Giese, Khan, and Zoglio.  Giese, Khan, and Zoglio's opinions must be

18  considered uncontradicted.  Therefore, the ALJ could only reject those opinions only on the basis

19  of specific, clear and convincing reasons supported by substantial evidence.  *Smolen v. Chater*,

20  80 F.3d 1273, 1285 (9th Cir. 1996).  The reasons that the ALJ gave are for rejecting their

21  opinions are vague and conclusory at best.

22       First, the ALJ wrote that the doctors' opinions are based on inferences drawn from

23  claimant's history and subjective remarks.  But mental illness, and in particular, schizophrenia, is

24  often diagnosed based on a patient's subjective reports.  *See* Merck Manual of Diagnosis and

25  Therapy, 1561 (Nineteenth Ed. 2011) (schizophrenia is diagnosed based on a "combination of

26  history, symptoms and signs"; and "[n]o definitive test for schizophrenia exists.").  *See also*

1   *Hardt v. Astrue*, 2008 WL 349003 (D. Ariz. 2008) (holding that the ALJ impermissibly

2   discounted the opinion of a treating psychologist where the opinion was based on the claimant's

3   subjective complaints because the practice of psychology depends at least in part on the

4   evaluation of the claimant's subjective reports); *Green-Younger v. Barnhart*, 335 F.3d 99, 107

5   (2nd Cir. 2003) ("[a] patient's report of complaints, or history, is an essential diagnostic tool")

6   (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)); *see also Brand v. Secretary of*

7   *Dept. of Health, Education and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical

8   diagnosis must necessarily rely upon the patient's history and subjective complaints."). Thus,

9   the ALJ's assertion that the treating physicians based their diagnoses on plaintiff's subjective

10   remarks and medical history is not a "clear and convincing" reason for rejecting their opinions.

11       Second, the ALJ writes that these treating physicians' opinions are not based on a long

12   pattern of observed behavior. Plaintiff's relationship with the treating physicians spans from

13   August 2007 till February 2009. Dr. Giese saw plaintiff four times, on 9/4/2007, 10/9/2007,

14   12/17/2007, and 4/8/2008. AR 216, 258, 257, 262. Dr. Zoglio saw plaintiff on 10/16/2008 and

15   Dr. Khan saw plaintiff on 2/21/2009. *Id*. at 283-85. While plaintiff's treatment relationship with

16   the HRC physicians is not long compared to a lifelong relationship between a patient and a

17   family doctor, the physicians at HRC saw plaintiff on a frequent basis over the course of a year

18   an a half, had the opportunity to observe plaintiff, and treated him with medication for his mental

19   impairments. There are no other medical opinions in the record that are based on a longer

20   pattern of observed behavior. In fact, the ALJ credited the opinion of Dr. Canty, who met and

21   examined plaintiff exactly once. Accordingly, the ALJ's statement that the treating physician's

22   opinions are not based a "long observed patten of behavior," without more, does not constitute a

23   clear and convincing reason for rejecting their opinions.

24       Finally, the ALJ wrote that the treating physicians' opinions regarding plaintiff's

25   significant limitations were not supported by objective findings or consistent with the record in

26   its totality. This reason is not clear or convincing because it is nothing but generic boilerplate

language.  The ALJ does not explain what sort of objective findings he would expect the doctors' records to contain.  Nor does he point to any specific piece or pieces of evidence that undermine the doctors' opinions.  Although there may be evidence in the record that is inconsistent with the treating doctors' opinions, the decision "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *See Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion").

Thus, the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's physicians' opinions.  The case must be remanded for further proceedings consistent with this opinion.

IV.  Conclusion

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is granted;

2.  The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in Plaintiff's favor; and

4.  This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED:  September 29, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE